## MORGAN JONES, RECEIVER, ET AL. v. V. L. SHAW.

Delivered May 22, 1897.

**1. Expert Testimony—Train Leaving Track.**

Expert testimony is admissible to show that in the ordinary course a sound truck under an empty car would not have been broken within sixty feet after leaving the track; and that an empty car on a sound truck would not have left a straight track when going at fifteen or eighteen miles an hour.

**2. Charge of Court—Railroad Company—Duty to Furnish Safe Appliances.**

A charge that a railway company is bound to furnish safe machinery and appliances for use by its employes in operating its road, and that if ordinary and reasonable care is not exercised by the company to do this, it is responsible for injuries to employes caused by such neglect, is not objectionable as absolutely requiring the company to furnish safe machinery.

**3. Master and Servant—Risks Incident to Employment.**

A railroad employe assumes all the risks ordinarily incident to the employment, but he has a right to rely on the company's implied promise to furnish safe machinery, and it is not his duty to inspect the appliances furnished him, but he takes the risk of such secret defects as can not be discovered by ordinary diligence, and no more.

**4. Railroad Company—Duty to Inspect Foreign Cars.**

A railroad company owes its employes the duty of inspecting foreign cars which go into its trains, as much as that of inspecting its own cars.

**5. Verdict—Evidence Sustaining—Railroad Accident.**

A finding that a car, or the trucks, wheels, or bolsters, or some other part of the outfit, was defective, is sustained by evidence that such car, while the train was running at ordinary speed, dropped at one corner and left the rails, and that its trucks became detached and were found broken after the accident.

Appeal from Wichita. Tried below before Hon. George E. Miller.

*Stanley, Spoonts & Thompson,* for appellants.—1. The evidence of the witness Schoulberg objected to was inadmissible. Railway v. Porter, 73 Texas, 904; Railway v. Thompson, 33 S. W. Rep., 718.

2. The charge that "a railway company is bound to furnish safe machinery and appliances for use by its employes in operating its road, and if ordinary and reasonable care is not exercised by the company to do this it will be responsible for injuries to its servants caused by such neglect," was not and is not applicable to the facts of this case, and imposes upon defendant a higher duty than is placed by law. Railway v. McCoy, 38 S. W. Rep., 36; Railway v. Williams, 82 Texas, 342; Railway v. Hoffman, 83 Texas, 286; Railway v. Shean, 18 S. W. Rep., 151; Railway v. King, 37 S. W. Rep., 34.

*Flood, Hughes & Foster,* for appellee.—1. This being a matter of expert testimony, the witness, having shown himself acquainted with the subject, could testify thereto, though it may involve the matter in dispute. Scalf v. Collin County, 80 Texas, 517; Railway v. Thompson, 75 Texas, 503; Whart. on Ev., sec. 452; Transportation Line v. Hope, 95 U. S., 477.

2. On duty to inspect foreign cars: Railway v. Kernan, 78 Texas, 294; Railway v. Putnam, 1 Texas Civ. App., 142; Eddy v. Prentice, 27 S. W. Rep., 1002; Goodrich v. Railway, 22 N. E. Rep., 397; Railway v. William, 24 S. W. Rep., 1; Gottlieb v. Railway, 3 N. E. Rep., 344; Bender v. Railway, 27 S. W. Rep., 732.

3. While it is true that proof of the accident and injuries alone will not prove negligence, the very nature of the accident may of itself, and through the presumption it carries with it, supply the requisite proof, and the fact of the casualty and the attendant circumstances themselves may furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer. McCrary v. Railway, 34 S. W. Rep., 97; Mullin v. St. John, 15 Am. Rep., 531; Hammond v. Woodman, 66 Am. Dec., 219, and cases cited; Edrington v. Railway, 39 N. Y., 227; Howser v. Railway, 27 L. R. A., 154, and cases cited; Dixon v. Pluns, 20 L. R. A., 698, and cases cited; Western Trans. Co. v. Downer, 78 U. S., 160, and cases cited; Railway v. Home, 69 Texas, 643, and cases cited; Bainowski v. Helson, 15 L. R. A., 33; Railway v. Paisley, 25 S. W. Rep., 64, and cases cited; Railway v. Smith, 74 Texas, 276; Railway v. Zimmerman, 81 Texas, 605; Railway v. Sugg, 62 Texas, 32, and cases cited; Curtis v. Railway, 18 N. Y., 534.

HUNTER, Associate Justice.—The cause of action alleged was that plaintiff, V. L. Shaw, on January 6, 1895, was a brakeman in the employ of Morgan Jones, receiver of the Fort Worth & Denver City Railway Company, and while engaged in said position he was seriously injured by reason of the unsound and dangerous condition of the trucks and framework of the trucks and appliances thereon, attached to and used in connection with a certain freight car in a train north of Wichita Falls and near the town of Chillicothe, on which car the plaintiff was braking, the injury being caused by the said defect and by the failure of the defendant to properly and carefully inspect the trucks and framework of the trucks of said car; that said car was in a certain freight train on top of which plaintiff was riding in the discharge of his duties, and the car left the track by reason of the defective condition of the trucks, by reason of which plaintiff received the injuries for which he sued.

The answer of defendant Morgan Jones consisted of a general demurrer, general denial, and specially, that if there was any defect in the car it was unknown to the defendant, and could not have been known by the exercise of ordinary diligence and care; that the car was not the property of the defendant, nor of the railway company of which he was receiver, but was a foreign car received by the defendant in due course of commerce for the transportation of freight over defendant's line of railway; that it was a new car and apparently in perfect good order, and was subjected to inspection and tests sufficient to have detected any defects in same, had any such existed or been discoverable, but defendant failed to discover any such defects; that the car was constructed upon the latest and most approved pattern, and equipped with new trucks, and its reputation among railroad men was first-class; that if there was any defect in said car it was a latent defect, unknown to defendant, and one that could not be known to him by the use of ordinary diligence; that if any person was negligent, it was a fellow-servant of the plaintiff; that under the universal custom foreign cars were received for transportation on all railroads throughout the United States, of which plaintiff was fully advised, and that if there were any latent defects in said cars not discoverable by ordinary inspection, the same were defects the risk of which was assumed by the plaintiff in entering the service of the defendant.

The verdict and judgment were in favor of appellee for $2500.

The evidence shows that appellee was a brakeman and was on the car when it left the track. He saw the left hind corner of the car drop lower than the others, and after running about 150 feet, bumping on the ties, the car turned over and injured his foot and spine. The injuries are permanent and greatly incapacitate him for labor, and have damaged him $2500, the amount found by the jury.

The evidence further showed that at the time of the injury the train was running from fifteen to eighteen miles an hour. The track was good, smooth and straight, and the car was empty. Within thirty feet of where the wheel left the rail the rear truck was found broken loose

from the car. The arch bars were broken and bent, the axle was bent, the bolster was broken, one wheel was broken, the side bearings on the bolster and the transom bearings was broken. The car had not gone more than sixty feet from where the wheel left the rail before this truck became detached from it.

The car was new, and had only been in service about five months. It was known as California Fruit Transportation Car No. 13,702. It was very large and very heavy, about as heavy empty as an ordinary car is when loaded. Its capacity was 50,000 pounds. Appellant's evidence shows that it was well built, of the very best material. The trucks upon which it was built were of that type known as the American steel bolster truck. These trucks were of the rigid type, and similar in design but stronger than the trucks in general use on cars in the United States, by reason of the increased size and strength of material entering into the construction of the same. All material and workmanship entering into the construction of the car were subjected to a careful inspection, and no material was allowed to be used before it was inspected. The car was much stronger and more durable than the average car used on railroads, because it was built under the most exacting and rigid specifications and inspections. It ought to last twenty years or more, and be perfectly safe for operation during that length of time. The framework of the car and trucks of the same should have been in good condition during January, 1895, as there was nothing about the trucks and framework that could have been rotten at said time, because of the short period of time the car had been in operation.

The car did not belong to appellant, nor to the Fort Worth & Denver City Railway Company, of which he was receiver, but belonged to the Hutchins Refrigerator Car Company, and was leased to the California Fruit Transportation Company. It was received by appellant at Fort Worth on January 4, 1895, for transportation over his line in due course of business, and was then inspected by appellant's car inspector at Fort Worth to see if it was roadworthy, and was found in good condition. It was inspected at Wichita Falls by Fred Fees, another car inspector of appellant, between 9 and 10 o'clock on the morning of the day of the injury. This inspector testifies that he inspected it carefully, and found everything in good condition. The trucks were in good condition; one wheel was slightly worn, but was perfectly safe to run. He applied the master car builder's gauge to the flange of this wheel, and found the flange 1⅛ of an inch in thickness. The cross-examination of this witness makes it appear doubtful whether he inspected this car, or even any of the cars in that train on that day.

The evidence shows that the flanges of new car wheels are 1 9-16 of an inch in thickness. The rules of the master car builders allow the rejection of a car where the flange is one inch or less, or over 1 7-16 of an inch, in thickness. Appellant's chief car inspector testified that if this car had only been in service five months, and everything was right about it, there would be very little wear about it; that "two years would be no

life for a truck; doesn't begin to be the starting point of a life of a truck; the truck will last as long as other parts of the car; the average life is fifteen years for stock cars and twenty years for box cars." The type of trucks under this car was the best in use. The frames and bolsters were made of basic steel, and were heavier and stronger than ordinary trucks, and much costlier. They were an improvement on the old style of truck, and superior to it, and had been in use about two and a half years.

The appellee's evidence tended to prove that the truck of the car in question was defective both in material and in construction, and tended also to prove that Fred Fees, appellant's car inspector at Wichita Falls, was not a careful, painstaking inspector, but did his work of inspection often in a hurried, careless and negligent manner; that often he would not strike the wheels with his hammer to see if they were sound or cracked, and often would not get under the cars to examine the trucks, nor even look under them.

The evidence tends to show that ordinarily, when the wheels leave the rail, they will run along over the ties close by the rail for several miles, without injury to the wheels or trucks.

Appellants offered no evidence explaining the cause of the derailment, or of any latent defects afterwards discovered.

Appellants complain of the admission of Carl Schoulberg's evidence, to the effect that, "in the ordinary course of business, an empty car upon a good track would not have broken in sixty feet, if it had been a sound truck," and also that, "if the truck on the car at the time of the accident had been in good condition, under an empty car, going at a moderate rate of speed, fifteen to eighteen miles an hour, on a straight track, the said car would not have left the track, but would have remained on and been compelled to stay on the track;" because said evidence is only the conclusions of the witness, and that, too, upon the very point of fact upon which the plaintiff must recover. It is insisted that to admit such conclusions is to take from the consideration of the jury all of defendants' evidence as to the careful and skillful construction of the trucks, the fine material of which they were made, the thorough tests to which that material was subjected before it was placed therein, the careful inspection of the trucks by competent inspectors on that day, and every other fact going to establish diligence on the part of defendant to operate its trains with safety to its employes.

We think the evidence was admissible as expert testimony. Schoulberg had qualified as an expert in building and repairing cars and in the running of trains, so that his opinion was admissible on the subject, not to be taken in the place of defendants' evidence, but in connection therewith, or weighed in opposition thereto. It was a question upon which a skilled and well informed railroad man would have knowledge, based upon his experience in the business, not exact knowledge, it is true, but of the same character as that by which a skilled physician is enabled to state, from viewing the dead body, the cause of the death. McCray v.

Railway, 34 S. W. Rep., 98; Railway v. Thompson, 75 Texas, 503; Trans. Line v. Hope, 95 U. S., 297; Whart. on Ev., sec. 452.

Appellants complain of the following paragraphs of the court's charge:

"2. A railway company is bound to furnish safe machinery and appliances for use by its employes in operating its road, and if ordinary and reasonable care is not exercised by the company to do this, it would be responsible for injuries to its servants caused by such neglect.

"3. A person entering the service of a railway company as its employe assumes all risks ordinarily incident to such employment, and the employer is not responsible for injuries caused by such ordinary risks. The employe of a railway company has a right to rely upon his employer's implied promise to furnish him safe machinery, and it is not the employe's duty to inspect the appliances furnished him. He takes the risk of such secret defects as can not be discovered by the use of ordinary diligence, and no more. It is the duty of a railway company to keep in its employment inspectors to inspect the machinery furnished to its employes, and to secure a careful inspection of such machinery; and a failure to do so is negligence.

"4. If you find and believe from the evidence that on the 6th day of January, A. D. 1895, the plaintiff was in the employ of Morgan Jones, receiver of the defendant Fort Worth & Denver City Railway Company, in the capacity of brakeman, and that said receiver furnished a car to be handled by his freight train on which plaintiff was serving, which had trucks which were unsound and defective, and that said unsound and defective condition of said trucks was not known to plaintiff, and could not have been discovered by him by the use of ordinary diligence on his part, and that such condition was known to the defendant or could have been learned by the defendant by the exercise of a careful inspection of said car, and you find that the defendant did not exercise ordinary and reasonable care to furnish the plaintiff with safe machinery and appliances in operating its said railroad, and that the defendant was thereby guilty of negligence as hereinbefore defined, and that the plaintiff on said day and date, in the County of Hardeman, Texas, near the town of Chillicothe, while in the performance of his duty to the defendant as its employe, was on the top of the above mentioned car, and that the said car by reason of the unsound and defective condition of the said trucks above mentioned left the rails upon which it was running, and thereby the plaintiff, without fault or negligence on his part, was thrown to the ground and sustained damages and suffered injury in consequence of the negligence of the defendant above mentioned, then you will find for the plaintiff, and in estimating his damages you may take into consideration the mental and physical pain suffered by the plaintiff, if any has been shown, the physical injuries sustained by him, if any such have been proven, and his lessened capacity to labor, if any such injury has been shown, in consequence of the wrongful acts complained of.

"6. If you find and believe from the evidence that the injuries complained of by the plaintiff were received by him in consequence of the

risks ordinarily incident to his employment, or if you find and believe from the evidence that the trucks of the car in controversy were not unsound or defective as complained of, or if you find and believe from the evidence that said trucks were defective or unsound, but you find that said defect or unsoundness were not known to the defendant, and that defendant secured careful inspection of said trucks and failed to discover such defect or unsoundness, then in either event you will find for the defendant."

The objection to the second paragraph is that it requires the railway company to furnish safe machinery, when the law only requires it to use ordinary care to do so. We think the whole paragraph read together sufficiently indicated the correct rule on the subject, and taken in connection with the other paragraphs of the charge, we think could not possibly have misled the jury.

The objection to the third paragraph is that it "was not applicable to the facts of this case, and gives the plaintiff rights and immunities from risk not given by the law in this case."

The objection to the fourth is that "there was no evidence to support the charge. The defective car was owned and controlled by another company, and was being hauled for hire by defendant, and was not in his use. There was no evidence that the injury to plaintiff resulted from any machinery or appliances of defendants."

The objections to the sixth paragraph are, "that it is predicated on the preceding erroneous charges defining risks incident to employment of plaintiff and the duties of defendant toward him, and in excluding the defendant's defense that the defective car was not furnished by defendant for use, but was a foreign car, owned and in use by another company, being hauled for hire by defendant."

These objections are all overruled, as it is plain to be seen that there is no merit in any of them. The charge of the court fairly, fully, and clearly put the issues of fact before the jury, according to the pleadings and evidence.

The twenty-fifth assignment of error complains that the verdict of the jury is contrary to and not supported by the evidence, in that "(1) there was no proof of any negligence on the part of the defendants; (2) there was no proof that any of the appliances used by defendants were defective; (3) the proof conclusively shows that the accident was unavoidable and beyond the control of the defendants; (4) the verdict of the jury was excessive and disproportionate to the injury sustained by plaintiff."

This assignment is overruled. It is as much the duty of a railway company to inspect foreign cars which go into its trains as to inspect its own. The servant has a right to rely upon the presumption that the master will use ordinary care in securing competent and diligent inspectors, and require them at proper and reasonable intervals carefully to inspect every car in its trains, while on the master's road, and any defect in such cars, or any part of them, which could have been discovered by such skilled and competent inspectors by the use of ordinary care, in

the application of their peculiar skill and knowledge in discovering defects, and which is the cause of injury to the servant, will render the master liable.

From the evidence of appellants' witnesses it is clear that, without some defect in these trucks or their fastenings, or in the wheels, they should have continued in use in good and safe condition for fifteen or twenty years, and the wheels should have lasted and been safe for five. The track was in good condition, straight and safe, the car was heavy but empty, the train was running at ordinary speed; yet without any apparent cause this car drops at one corner, leaves the rails, and its trucks become detached and are found broken, and the injury occurs. The jury had a right to infer from these facts that the car, or trucks, or wheels, or bolster, or some other part of the outfit, was defective. McCray v. Railway, 34 S. W. Rep., 95.

This was the only reasonable conclusion to be drawn from the fact that the wreck occurred under such circumstances, because under the circumstances, as detailed by appellants' own witnesses, there must have been a defect in this car somewhere, else the wreck would not have occurred. The appellants' evidence shows no other cause for it; in fact, affirmatively shows that no other cause existed. True, it may have been a latent defect that could not have been discovered by a skilled inspector and a careful inspection, but the jury were told that if such was the case they should find for defendant. There is ample evidence of negligence on the part of appellant, however, of a substantive character to support the verdict. His own evidence on cross-examination tends to show that the inspector Fees did not inspect this car at Wichita Falls on that day, and it otherwise appears that he was a careless inspector, and frequently did his work of inspection in a hasty, careless manner, so that, even if the defects had been patent or easily discoverable by a skillful and careful inspection, he might not have found them, owing to his hasty and careless manner of inspecting cars. In the face of all these facts, it devolved upon the appellant to prove to the jury that the injury was caused by some agency other than the negligence of his inspector, and this we think he failed to do.

We do not think, under the evidence, that the verdict is excessive.

The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.