ROWE v. COLORADO & S. R. CO. et al.
(No. 1376.)

(Court of Civil Appeals of Texas. Amarillo. June 19, 1918. Rehearing Denied Oct. 9, 1918.)

1. APPEAL AND ERROR ⬷719(6)—FUNDAMENTAL ERROR—DIRECTION OF VERDICT.

The action of the trial court in peremptorily instructing the jury presents fundamental error, to be noticed though assignment of error thereon is defective.

2. APPEAL AND ERROR ⬷927(7)—REVERSAL AFTER DIRECTED VERDICT—EVIDENCE.

In action under federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657–8665) for death of a brakeman, the judgment would be reversed on appeal from a directed verdict for defendants if the evidence, taken most favorably to appellant, would authorize men of reasonable minds to conclude that defendants' negligence proximately resulted in death.

3. MASTER AND SERVANT ⬷286(5)—FEDERAL EMPLOYERS' LIABILITY ACT—NEGLIGENCE—QUESTION FOR JURY.

In action under federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657–8665) for the death of a freight brakeman, evidence as to defendants' negligence held to make a question for the jury.

4. MASTER AND SERVANT ⬷124(4)—FEDERAL EMPLOYERS' LIABILITY ACT—INSPECTION OF FOREIGN CARS.

A railroad is bound to inspect the cars of another railroad used on its road just as it would inspect its own cars, and owes such duty as master, and is responsible for the consequences of such defects as would be discovered by ordinary inspection.

5. EVIDENCE ⬷93—INSPECTION OF FOREIGN CARS—BURDEN OF PROOF.

In action under federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657–8665) for death of a brakeman, the question whether a foreign car was inspected before being placed in charge of a train crew was a fact lying peculiarly within defendants' knowledge, and the burden of proof was on them.

6. MASTER AND SERVANT ⬷286(24)—FEDERAL EMPLOYERS' LIABILITY ACT—INSPECTION OF FOREIGN CARS—QUESTION FOR JURY.

On evidence in action under federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657–8665) for death of a brakeman, held, that defendants' negligence in not properly inspecting a foreign car before it was placed in charge of a train crew was for the jury.

7. COURTS ⬷97(5)—FEDERAL STATUTE—PRECEDENTS.

In action under federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657–8665), the federal court decisions in similar cases are to be followed by the state courts in considering the issues.

8. MASTER AND SERVANT ⬷289(33)—FEDERAL EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In action under federal Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657–8665) for death of a brakeman, held, on the evidence, that his contributory negligence in stepping upon the pin lifter so as to uncouple the cars was for the jury.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by Ada Rowe, administratrix, against the Colorado & Southern Railroad Company and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

L. C. Barrett and J. N. Browning, both of Amarillo, for appellant. E. E. Whitted, of Denver, Colo., Turner & Dooley, of Amarillo, and Thompson, Barwise & Wharton, of Ft. Worth, for appellees.

HALL, J. Appellant filed this suit against the Colorado & Southern Railroad Company and the Denver City Railway Company, for the benefit of herself and two minor children, seeking to recover damages for the death, on the 15th day of June, 1916, of Edgar Rowe, the husband of appellant. Appellant alleges in substance that on or about the 15th day of June, 1916, Edgar Rowe was in the employ of both the appellees, as a brakeman; that on or about said date he was killed near Des Moines N. M., while en route from Trinidad, Colo., to Texline, Tex. No question is made upon the pleadings, and it is unnecessary to set out here in detail the allegations of either party. Appellees answered, alleging contributory negligence and assumed risk. After the evidence was all introduced, the court directed a verdict for the appellees, and this action is assigned as error.

[1, 2] Appellees insist that appellant's first assignment of error is multifarious, and therefore is not entitled to consideration; but the rule in this court is that the action of the trial court in peremptorily instructing

the jury presents fundamental error. From a perusal of the briefs we learn that the trial judge was of the opinion that the maxim res ipsa loquitur does not apply to cases arising under the federal Employers' Liability Act (April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]), in suits between railroad corporations and their employés and further that the evidence of negligence was insufficient to warrant the court in submitting the issue to the jury. It then becomes our duty to review the statement of facts, and if the evidence, taken in its most favorable light to appellant, was such as to authorize men of reasonable minds to conclude that appellees had been guilty of negligence proximately resulting in the death of Edgar Rowe, the judgment should be reversed.

[3] It was shown that Edgar Rowe resided at Trinidad, Colo., and was employed as a freight brakeman by the Colorado Southern Railroad Company, and at the time of his death was performing his duties as such brakeman. He was killed between 9 and 10 o'clock on the night of June 15, 1916. The train upon which he was working was running south from Des Moines, N. M., and as head brakeman he had been ordered to turn up the retainers on the various cars making up his train. The train was composed of about 45 cars, and it was ascertained after the death of Rowe that he had turned up the retainers on several of the cars. The witness H. E. Oakes, who was rear brakeman on the same train, testified that when the train stopped he got out of the caboose and went up the train to find what the trouble was, and found Rowe dead under about the seventh car from the caboose, lying in the middle of the track on his face; that the train had been running about 20 miles an hour; that Rowe had evidently been dragged about 35 feet after he struck the ground; that he found Rowe's lantern, burning and upright, in the southwest corner of what is called the Erie car, which it seems was a coal car loaded with coal at the time, and he further found that the retainer on this car had been turned up and the air hose between the Erie car and the car immediately south of it, which the witness calls the Southwestern car, was uncoupled. He testified that, in order for Rowe to turn up the retainers on these cars, he would have been forced to go on the southwest corner of the car and lean over its edge. He further says that the east bottom door of the Southwestern coal car had dropped down and spilled out about four tons of coal, about where Rowe was killed; that the coal was caused to fall from the car by the bottom door of the car breaking loose; and that the coal was scattered along on the east rail. He further stated: That there was a shaft running through under the car fitted with chains, and by winding the shaft the chains

raised and fastened both doors on each side of the bottom of the car. That he found a piece of broken baling wire on the door which was open, and that the door on the west side of the car, and which was still in place, was fastened with baling wire. That the chains on both doors were hanging down loose and had never been wound up. That it was not usual for the doors to be fastened with baling wire. That, when coal falls out of a car under such circumstances, it creates lots of dust, and pieces of coal are thrown in all directions. There were automatic couplers on both of the cars, and that the cars were coupled, but the air hose was uncoupled. Rowe's body was found about five minutes after he was killed.

Rowe was a sober, industrious man. It appears that the two coal cars were picked up by this train at Des Moines, and that turning up retainers on such cars was within the line of Rowe's duties. This witness stated that it was his opinion that the train became uncoupled between the two coal cars mentioned at about the place Rowe was killed, and stated that he based his opinion upon the fact that the hose was uncoupled and not damaged. That it came to a stop at or near the place where Rowe was found dead. That the parting of the hose set all the brakes which caused the train to stop. That the air hose was uncoupled at only one place. That the brakes being set on the front end of the train after it became uncoupled caused it to slow up when the rear portion overtook the front end, causing the couplers to come together and couple automatically. He stated that he found the couplers in good condition after the accident; that the Erie and Southwestern cars were about the twelfth and thirteenth cars from the engine. He explained that there was an air retainer on every car, and when the retainer was turned up it kept the brakes set by holding the air pressure in the brake cylinder; that at or near the place where Rowe was found it was necessary to have air retainers in proper position on account of the grade; and that it had been the custom to turn up the air retainer at that particular place ever since his employment by the road. There was an end platform about a foot wide on the Erie car, but no platform on the Southwestern car. The coal from the car fell on the east rail; some of it going between the two rails, and some of it east of the track.

L. J. Smith testified as an expert for the appellant. The substance of his testimony is: That when the air hose of a train is parted about 13 or 14 cars back of the engine, where there are about 45 cars in the train, it applies the brakes in emergency, and would stop the train, causing it to jar and shake. That, if a man was standing on a car where the brake occurred and between the cars, it would have a jarring effect; and that if about four tons of coal were spilled

on the east rail of the track, with the train running about 20 miles an hour, it might have the effect of uncoupling the train and might result in derailing the car. That if it uncoupled the train it would also uncouple the air hose. That trains sometimes uncouple and then couple again. That the air hose might be uncoupled under such circumstances and still not uncouple the train. That the spilling of four tons of coal on the track would raise a dust and would have the effect of blinding a man standing between the cars. If a car is going over an obstruction, it will naturally rise; one car will go up and the other will go down; that has a tendency to uncouple the coupling, and the same effect would be caused by the coal. The cars going over the coal could and would probably uncouple them, depending largely on where the coal was dropped and how much was plowed off by the brake beam. The coal being on the rails would cause the couplers to work up and down, and possibly uncouple the train. That, after going over the coal, the cars would drop back down onto the rail and go on. The brake beam is about six inches from the rail, and, if it plowed some of the coal off, would leave about six inches still on the rail, and a car going over it under such circumstances would do a lot of jarring and jolting, moving the cars up and down.

Appellees advance the theory that the train was uncoupled through the negligence of Rowe in stepping upon the pin lifter of the Erie car. This contention is based upon the testimony of the witness Lynas, assistant trainmaster of the Ft. Worth & Denver City road at Texline, who testified that he saw the cars in question when they reached Texline. He stated:

"There was a coal car directly north of the car that had dumped the coal that had some lint on the left rod; looked as if left there by some party going between the cars and rubbing the left rod."

The engineer, Coopers, testified as follows·

"The car that dumped began dumping a mile or more before Rowe fell, and the coal had all rolled out of the car up to the point where he fell."

Meese, the conductor, testified:

"About four tons of coal had dropped through the bottom of the car. I could not state whether the coal fell from the car before or after his death; I don't know which."

All the witnesses testifying upon the issue say that the coal falling through the bottom of the car under such conditions would create a great deal of dust. One witness testified that the chains used for closing and fastening the trapdoors were broken, and the witness Oakes stated that it was not probable that Rowe could have stayed in the coal car where the lantern was found and have turned up the retainer on that car, because the car was loaded with coal. There is a conflict on this issue. There is no testimony in the record with reference to the inspection of these cars at Des Moines, or elsewhere,

prior to the accident. It was shown that Rowe was an experienced railroad man and had been employed in the operating department of railroads for about 16 years.

Appellees contend that the United States courts hold that the maxim res ipsa loquitur does not apply to actions growing out of personal injuries between master and servant, and appellant seems to be of the same opinion. We are inclined to doubt the correctness of this position as applied to all cases since reading the opinion of Judge Dennison in Southern Ry. Co. v. Derr, 240 Fed. 73, 153 C. C. A. 109, holding that the doctrine does not always apply as the effect of the federal Employer's Liability Act was to abolish the fellow-servant rule. In any event, appellant in this cause proves facts from which the jury may infer negligence, and she is not forced to rely on the maxim. The evidence introduced by her proves more than the death of Rowe and the mere uncoupling of the train and air hose. This is not a case where the injury alone is shown without any explanation of its cause or the proof of any facts from which negligence may be inferred. Since the judgment must be reversed, it would not be proper for us to discuss the evidence, and we shall not do so further than is necessary. No proof with reference to the inspection of the coal car with the defectively fastened trapdoor was introduced. The evidence does not show whether this was a foreign car, or whether it was owned by the appellees.

[4] Giving appellees the benefit of the doubt, the rule with reference to foreign cars as established by the United States Supreme Court is:

"A railroad company is bound to inspect the cars of another company used upon its road just as it would inspect its own cars; that it owes this duty as master, and is responsible for the consequences of such defects as would be disclosed or discovered by ordinary inpection; that when cars come in from another road which have defects visible or discernible, * * * it must either remedy such defects or refuse to take them." Baltimore, etc., Ry. Co. v. Mackey, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624.

"This duty of examining foreign cars must obviously be performed before such cars are placed in trains upon the defendant's road or furnished to its employés for transportation. When so furnished, the employés whose duty it is to manage the trains have a right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe and suitable appliances for the discharge of their duty, and that they are not to be exposed to risk or danger through the negligence of their employer." Id.; 8 Enc. U. S. S. C. R. 286, n. 45.

And this seems to be the rule adopted by the courts of this state. Jones v. Shaw, 16 Tex. Civ. App. 290, 41 S. W. 690, writ of error denied by Supreme Court 93 Tex. 665, 42 S. W. xvi; Texas, etc., Ry. Co. v. McClanahan, 2 Posey, Unrep. Cas. 270; Galveston, etc., Ry. Co. v. Nass, 57 S. W. 910; Id., 94 Tex. 255, 59 S. W. 870; McCray v. G., H. & S. A. Ry. Co., 89 Tex. 168, 34 S. W. 95.

[5, 6] The question of whether or not the

car was inspected before being placed in charge of the train crew was a fact lying peculiarly within the knowledge of appellees, and the burden of proving it rested upon them. If the jury believed the statement of the witness Oakes that the trapdoor in the bottom of the car of coal was tied with baling wire, and that the chain intended to be used in closing and holding the door was either 'broken or hanging from the shaft loose, they would be authorized to base a finding of negligence upon it, as the defect was patent to one using even ordinary care in inspecting such a car.

[7] Since this case arises under the federal Employers' Liability Act, the federal court decisions in cases of like character must be our guide in considering the issues. In the case of Patton v. T. P. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the appellant was denied a recovery because he took the chances as to the condition of the engine and was. injured by a defective step. He was not required to do any work on or about the engine until after it had been inspected, and if he had waited until after inspection, as it was his right and duty to do, before attempting to clean the engine, the injury would have been avoided. The undisputed evidence was that the defective step which caused the injury had been duly inspected at El Paso and was in perfect condition when the engine started on its trip, and that it was impossible to tell how it was loosened. The evidence showed that it could have been loosened by reason of the ordinary working and jarring of the engine while the train was running or by striking against something along the line. The theory was further advanced that it might have been struck by a large lump of coal falling on it from the tender. If the evidence had shown that the step had been secured in its place at El Paso by a scrap of baling wire instead of using a bolt and nut, and that the wire was found broken after the accident, the appeal would, in our opinion, have resulted in a reversal, especially if the evidence had shown that fastening steps upon engines with baling wire was unusual.

Looney v. Metropolitan Ry. Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564, is a case where the employé of an electric railway company was killed by touching certain parts of the car, which it appears were not properly insulated. The court said it was not necessary for the deceased to touch the insulated parts of the leads in making the connection and that one of two things was necessary to cause the accident: A leak in the insulation, or the act of the deceased in touching the uninsulated ends of the leads. There was no proof that the insulation was worn off the leads at the place where deceased was required to touch them in making the connection, and the court said:

"To hold a master responsible, a servant must show that the appliances and instrumentalities furnished were defective. A defect cannot be inferred from the mere fact of an injury. There must be some substantive proof of the negligence. Knowledge of the defect or some omission of duty in regard to it must be shown."

The evidence in Smith v. Illinois Central Railway, 200 Fed. 553, 119 C. C. A. 33, shows that the engineer was found dead, lying by his engine between two tracks in the company's yards, with his foot cut neatly off. There was no proof of any negligence of any kind. Of course, the rule urged by appellees applies to such case.

[8] Appellees advance the theory in this case that Rowe's death was caused by his stepping upon the pin lifter, thus uncoupling the cars by his negligence. The agent at Texline found lint upon the rod of the pin lifter; but it was not shown that the lint was from Rowe's shoes, or in fact any part of his clothing. As far as the evidence shows, there was no dirt, mud, or other evidence on the rod of the pin lifter that Rowe's foot had ever been in contact with it, and, since it is shown that he was a railroad man of 16 years' experience and was sober and industrious, the presumption of care on his part obtains. Admitting that this evidence tended to show contributory negligence on the part of Rowe, the undisputed fact that four tons of coal had been spilled under the running train through a trapdoor which had been tied with baling wire was such proof tending to show negligence that the court should have submitted the issues to the jury. Myers v. Pittsburg Coal Co., 233 U. S. 184, 34 Sup. Ct. 559, 58 L. Ed. 906; T. & P. Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; T. & P. Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136.

Exhaustive briefs have been filed by the parties, citing and discussing a multitude of cases from the courts of this state and Supreme Courts of other states, which we do not deem necessary to discuss.

Because the court erred in directing a verdict for the appellees, the judgment is reversed and the cause remanded.

HUFF, C. J., not sitting, being absent in Austin, sitting with Committee of Judges.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes