JAMES MACKIN *vs.* BOSTON AND ALBANY RAILROAD.

Suffolk.    Jan. 16, 17. — June 20, 1883.    FIELD & W. ALLEN, JJ., absent. DEVENS, J., did not sit.

If a railroad corporation is bound to use reasonable care in furnishing its employees with suitable cars, on which they are employed, this rule does not apply to a car received from another corporation, while in transit to its place of destination ; but the only duty it owes its employees in such a case is that of providing suitable and competent inspectors.

An inspector of a railroad car and a brakeman employed on the car are fellow servants ; and the latter cannot maintain an action against their common employer for an injury resulting from a failure of the former to perform his duty.

TORT, for personal injuries received by a brakeman, while in the defendant's employ.

At the trial in the Superior Court, before *Rockwell*, J., the plaintiff's evidence tended to show that on May 19, 1881, he was the rear brakeman on a train of freight cars which was at Brookline, about two miles from the freight yard of the defendant at Boston; that it was the plaintiff's duty to shackle certain cars, standing on a side track, to the train; that he did this, and then walked towards the rear of the train, and, after the train started, attempted to get on the rear car by means of a ladder at its forward end; that, before taking hold of the ladder, he noticed that the lower round was gone; that he then took hold

of the round next above, and attempted to draw himself up, but before he got hold of another round with his other hand, the round he had hold of gave way, and he was thrown to the track and received the injuries complained of ; that the ladder was made of separate irons, the ends of which were screwed to the car, and the part between projected from the face of the car, so that it could be grasped by the hand, or afford a resting-place for the foot; that the plaintiff at the time of the accident was properly ascending the ladder in the discharge of his duty; that, after the accident, the place where the iron had been was examined, and it was found that the screw was gone, the screw-hole was twice as large as it should be, and the wood was decayed. Two witnesses testified that the car looked like an old car, and one of them that it had the appearance of a very old car.

There was no evidence, nor did the plaintiff contend, that the car was not originally constructed of proper materials. It went to Brookline from Boston, over a branch of the defendant's road, loaded with flour, and was empty at the time of the accident, and was about to be drawn back to Boston under the defendant's management.

The plaintiff testified that he was aware, while in the employ of the defendant, that many freight cars came upon the road which were not owned by the defendant, and that, in the ordinary course of business, many such foreign cars were drawn over the road as part of the defendant's freight trains.

The defendant put in evidence tending to show the following facts : The car in question was not owned by the defendant, but by the Merchants' Despatch Transportation Company, a stock company or association owning a large number of freight cars, which go into all parts of the country. It came upon the defendant's road at East Albany, (otherwise called Greenbush,) New York, from the West, and left there for Boston on May 10, 1881, and left Boston for Brookline on May 13th. Throughout the month of May, 1881, as well as before and since, the defendant had a sufficient force of competent and suitable inspectors and repairers at East Albany, whose duty it was to inspect every freight car which arrived there from the West, and to cause every defective car to be repaired before it left the

station to go eastward.   These inspectors were on duty when the car in question reached East Albany, and while it remained there.   A like force of inspectors was, during that month, as well as before and since, maintained by the defendant, at each of the following stations on its road, namely, Pittsfield, Springfield, Worcester, and Boston; and their duty was to inspect every car which arrived at their respective station, and see that every defective car was repaired before it left the station; and at each of the places and stations above named, abundant and suitable materials and means for making repairs on cars were provided.   All these inspectors and repairers were on duty, under the supervision of competent and suitable foremen, hired for the purpose, when the car arrived and remained at each of the stations named, and when it left such station. These employees of the defendant were selected for the work on account of their proved fitness for it; and, if they all did their duty, no car passed either station without proper inspection, nor without first receiving all the repairs which such inspection showed that it needed.

It was shown that from two hundred to five hundred cars passed Albany going eastward on the defendant's road daily, and on one day there were seven hundred and fifty.

The car was repaired at Boston the day after the accident; and the man who repaired it testified that all it needed was the putting on of one iron and the tightening of one or two screws.   He did not remember whether the iron was fastened by him in the place whence it had pulled out, or was moved to a new place.   He testified that the ends of the iron, through a hole in the middle of which the screw — a half-inch screw — passed, were as large as a half-dollar.   He added, " It is my impression that the hole was not solid."

The defendant's business has been for years such as to require that the defendant should draw over its road large numbers of cars owned by others, and coming from all parts of the West; and more than half the freight cars drawn over its road, while the plaintiff was employed by it, were such foreign cars, it being necessary in the through business, as it is called, that merchandise from the Western States should be carried from its starting-point to its destination without change of cars.

The defendant asked the judge to order a verdict for the defendant, because there was no evidence of negligence on the part of the defendant, and because the negligence, if any, was that of a fellow servant or servants of the plaintiff. The judge refused so to rule.

The defendant then asked the judge to instruct the jury as follows:

"1. If the defendant provided a suitable number of competent persons to inspect all cars which arrived at Albany, Pittsfield, Springfield, Worcester and Boston, and they were so employed from the time when this car was received at Albany till it left Boston for Brookline, and if suitable provisions were made at these places for repairs, the defect in the car was not the result of negligence on the part of the defendant, and the verdict must be for the defendant. 2. If the defendant provided a suitable number of competent persons to inspect all cars which arrived at Boston, and to make needed repairs, and they were so employed at the time of the arrival of this car, the defect in the car did not result from negligence of the defendant, and the plaintiff cannot recover. 3. If the defendant made suitable provision for the inspection and repair of cars, and the accident was owing to a defect which existed by reason of the negligence of these inspectors, or any of them, the defendant is not liable. 4. If the only negligence was on the part of the inspectors employed by the defendant, and the defendant had used reasonable and due care in the appointment of these inspectors in suitable numbers, the plaintiff cannot recover."

The judge declined to give any of the instructions asked for, and instructed the jury on these points as follows:

" It was the duty of the defendant corporation to take care of the car as if it had been its own. Was the defendant negligent, or was it in the exercise of due care, in regard to this car? If the defendant took reasonable care in receiving this car into its use; if it employed suitable inspectors, and sufficient in number and in skill; if the car was thoroughly inspected; if those inspectors had it in their power to call in the aid of suitable repairers, with proper materials and means of repair; if, whenever there was a defect, that defect was repaired and removed; if there was no negligence on the part of the inspectors,

no want of skill, and every duty was fully and faithfully done, — then the corporation can contend that it had used all the means of safety in regard to this car which the law requires it to do. If you find that the plaintiff was in the exercise of due care, he may recover, if the defendant was negligent. If you are satisfied that the defendant did use reasonable care throughout, in regard to this car, — in using it on its road, in providing competent and faithful inspectors and skilled repairers, always ready to make repairs, and provided always with suitable materials for those repairs whenever needed, and that these employees had done their duty, — the jury are authorized to find for the defendant."

The jury returned a verdict for the plaintiff in the sum of $7000; and the defendant alleged exceptions to the refusals to rule and to the instructions given, so far as they were inconsistent with the instructions asked for.

*A. L. Soule,* for the defendant, cited *Smith* v. *Potter,* 46 Mich. 258; *Columbus & Xenia Railroad* v. *Webb,* 12 Ohio St. 475.

*S. B. Allen,* (*W. B. Allen* with him,) for the plaintiff, cited *Schopman* v. *Boston & Worcester Railroad,* 9 Cush. 24; *Fletcher* v. *Boston & Maine Railroad,* 1 Allen, 9; *Jones* v. *New York Central & Hudson River Railroad,* 28 Hun, 364, and 92 N. Y. 628; *King* v. *Ohio Railroad,* 14 Fed. Rep. 277.

C. ALLEN, J.   Even if the car in question is treated as a car of the defendant, furnished by it for its local business between Boston and Brookline, the instructions given to the jury seem to us to hold the defendant to a higher degree of responsibility than the law imposes upon it. The words, " if, whenever there was a defect, that defect was repaired and removed," when taken in the connection in which they occur, virtually required the defendant to warrant the perfect condition of the car. This is in excess of the rule, as recently declared in *Holden* v. *Fitchburg Railroad,* 129 Mass. 268, 274, 276, 277, where the duty of a master, in respect to those things which he is bound to furnish and keep in good condition, is held to be that of using reasonable care.

In the present case, however, it appears that the car was not owned by the defendant, but came from the West, and was received upon the defendant's road at its western terminus at

Greenbush, and was drawn to Boston, and thence to Brookline; and it is contended by the defendant, as the true construction of the bill of exceptions, that the destination of the car when received was Brookline, and that the defendant did not use it in the local business of the corporation, but merely drew it to its original destination, and unloaded it, and was about to draw it back to Boston, to be in readiness for its return to the West. These latter facts are not stated in express terms, but, if true, (although perhaps the mere ownership is not material,) a car so received, while in transit to its destination, and until ready for such inspection as would be suitable and necessary in preparation for its return, would not come within the rule applicable to machinery and appliances furnished by the defendant. According to the course of business, well known to the plaintiff, and notorious, the defendant was in the habit of receiving many such cars daily, and drawing them over its road as a part of its freight trains. Even in the absence of any statute, or special contract, regulating the terms of receiving and drawing such cars, the defendant was bound, as a common carrier, to receive and draw them. *Vermont & Massachusetts Railroad* v. *Fitchburg Railroad*, 14 Allen, 462, 469. The obligation of drawing cars over its road would not extend to such as were in an unsafe condition; but, as to cars so received, the duty of the defendant is not that of furnishing proper instrumentalities for service, but of inspection, and this duty is performed by the employment of sufficient, competent and suitable inspectors, who are to act under proper superintendence, rules and instructions; and, however it may be as to other cars, the inspectors must be deemed to be engaged in a common employment with the brakemen as to such cars, while in transit, and until ready to be inspected for a new service.                    *Exceptions sustained.*