## JERRY REYNOLDS *v.* BOSTON & MAINE RAILROAD COMPANY.

*Railroad companies liable for defects in foreign cars.   Double deadwoods.   Duty to instruct.   Contributory negligence.*

1.  A railroad company is liable to its employees to the same extent in respect to foreign cars coming to it from connecting roads as in respect to cars owned by it.

2.  The use of cars equipped with double deadwoods is not negligence *per se*, so long as they can be coupled with safety by an employee who knows how the coupling should be made and makes it with proper care.

3.  A master must instruct his inexperienced servant as to those dangers in an employment, which it requires peculiar skill and knowledge to avoid, which are known to the master and unknown to the servant.

4.  The defendant employed the plaintiff as a freight brakeman, knowing that he had no previous experience in this capacity.   Most of the cars then being hauled over the defendant's railroad were equipped with single deadwoods, but many were equipped with double deadwoods, and such cars were liable to be found in any of the defendant's trains. In coupling cars equipped with single deadwoods, the deadwoods do not meet and the arm is extended directly into the link.   With cars equipped with double deadwoods, the deadwoods do meet and the arm of the coupler must be carried above or below.   When injured the plaintiff had been in the employ of the defendant some five days, had learned to couple cars equipped with single deadwoods, but had never seen and did not know there was such a thing as a double deadwood.   Being called upon to make a coupling between two cars provided with these double deadwoods, he extended his arm for that purpose in the usual manner, when it was caught and crushed between the deadwoods.   *Held*, that these facts tended to show negligence upon the part of the defendant in not having properly instructed the plaintiff as to this hazard.

5. *Held*, further, that the plaintiff was not guilty of contributory negligence, as matter of law, in not observing and avoiding the danger as the cars came together; especially since the evidence tended to show that with double deadwoods even, the draw-bars would meet first and be driven back.

Action on the case. Plea, the general issue. Trial by jury at the September term, Orleans county, 1890, Powers, J., presiding. The court directed a verdict for the defendant at the close of the plaintiff's evidence, to which the plaintiff excepted.

The plaintiff sought to recover for the loss of an arm occasioned by catching the same between the deadwoods of two cars, which the plaintiff was attempting to couple while in the employ of the defendant as a brakeman. The plaintiff sought to charge the defendant with negligence in two respects; first, in that the cars between which his arm was caught were of an improper construction; second, in that the defendant had not given the plaintiff proper instructions.

The evidence of the plaintiff tended to show that the cars in question were both equipped with what are known as double deadwoods, being two blocks of wood, or iron, one on each side of the draw-bar, which meet when the cars are forced together; that the business of coupling cars equipped with double deadwoods was much more hazardous for the brakeman than with cars equipped with single deadwoods; that the use of double deadwoods had been in a large measure discarded and that no cars so equipped were now manufactured for its own use by the defendant. It appeared that the cars in question belonged to the Pennsylvania Railroad Company, that they were in good order and were received loaded by the defendant for the purpose of being transported over its line of railroad. It further appeared that substantially all the cars of the said Penn. Railroad Co., were provided with double deadwoods of the same kind, and that several other important railroad systems also used them. The witnesses for the plaintiff testified that a person acquainted with

cars of this construction and the manner of coupling them, could, with the exercise of ordinary prudence, make the coupling with safety, but that there was more liability to.accidents than with single deadwoods.

In respect to his second claim, the evidence of the plaintiff tended to show that with cars equipped with single deadwoods the deadwoods did not meet, and that in coupling such cars, the one making the coupling would stand upright, and extend the hand directly into the link and draw-bar, but that with cars equipped with double deadwoods, it was necessary to carry the arm eitherab ove or below the deadwoods, and that if one attempted to couple cars provided with double deadwoods in the same way that he would cars with single deadwoods, the arm would be caught between the deadwoods.

At the time of the accident the plaintiff had been in the employ of the defendant for some five or six days, and during all this time there had been a full complement of help with the train besides himself. When he hired out to the defendant, he informed the one who engaged him that he had had no experience whatever as a brakeman. He was at that time about twenty years of age, the son of a farmer, having lived some miles from the railroad, and having no acquaintance with it save as he had incidently observed it in going upon it from time to time. He testified that, when employed, the one who employed him cautioned him that the business of a brakeman was a very dangerous one, that he must look out for himself, and that the same caution was repeated to him by one or more of his fellow employees when he began work upon the train; that he had also been cautioned by the conductor of the train to look out for cars loaded with lumber; that he had been shown how to make a coupling between cars provided with single deadwoods, and had repeatedly made such couplings, but that his attention had never been called to the fact that there was, nor did he know that there was such a thing as a double deadwood; that at the time of the accident he was

called upon by the conductor in charge of the train to help in setting out a car, and that in so doing it became necessary to make a coupling between two cars equipped with double deadwoods; that the cars were moved together slowly; that he was beside the moving car, and from there walked to the stationary car, adjusted the pin in the draw-bar, then turned and entered the link, standing and extending his arm in the same manner that he had previously done in making couplings between cars provided with single deadwoods; that he did not see nor notice the double deadwoods until his arm was caught between them.

The evidence of the plaintiff further tended to show that in case of double deadwoods the draw-bars ordinarily met first, as the cars came together, but were forced under by the concussion so that the deadwoods received the shock.

*C. A. Prouty* and *E. A. Cook* for the plaintiff.

It should have been submitted to the jury to say whether or not the defendant had acted with ordinary prudence in putting upon its road cars equipped with double deadwoods. The evidence of the plaintiff tended to show that the use of double deadwoods was much more hazardous to the brakeman than the use of single deadwoods. A master is not obliged to adopt every new device simply because it will contribute to the safety of his employees, but he is obliged to use reasonable prudence thereto; and whether he does this is for the jury. *Wheeler* v. *Wason Mfg. Co.* 135 Mass. 294; *Washington & Geo. Rd. Co.* v. *McDade*, 135 U. S. 554; *Northern Pac. Rd. Co.* v. *Herbert*, 116 U. S. 642; *T. W. & W. Rd. Co.* v. *Fredericks*, 71 Ill. 294.

The fact that this car was a foreign car, is immaterial. By receiving it into its train, the defendant made it for the time being its own car. There was no law which obliged it to receive and transport the car if it was defective either in construction or repair. *Gottlieb* v. *New York Central &c. Rd. Co.*, 100 N. Y. 462; *Goodrich* v. *N. Y. Cent. &c. Rd. Co.*, 116 N. Y. 398; *Int.*

&c. Rd. Co. v. Kernan, 78 Texas 294; Gutridge v. Mo. Pac. Rd. Co., 94 Mo. 474.

The plaintiff did not assume the risk, unless he knew of it. Carbine's Adm'r. v. Ben. & Rut. Rd. Co., 61 Vt. 348.

It was the duty of the defendant to instruct the plaintiff. The plaintiff had been told how to couple cars provided with single deadwoods. He did not know that there was such a thing as a double deadwood. The plaintiff did know that it hauled such cars in its trains; therefore, it was the duty of the defendant to instruct the plaintiff as to the nature of these cars, and the manner in which they should be coupled, before setting him to that service. Sher. & Red. Neg. s. 203; Miss. Pac. Ry. Co. v. White, 76 Texas 102; Louisville &c. Ry. Co. v. Frawley, 110 Ind. 18; Mo. Pac. Rd. Co. v. Gallbraith, 66 Texas 526; Greenleaf v. Ill. Cen. Rd. Co., 29 Iowa 9, 47; Galveston Rd. Co. v. Garrett, 13 S. W. Rep. 62; Wheeler v. Wason Mfg. Co., 135 Mass. 294; O'Neal v. St. Louis &c. Rd. Co., 9 Fed. Rep. 337; O'Connor v. Adams, 120 Mass. 431.

Whether the plaintiff was guilty of contributory negligence, was under the circumstances of this case for the jury. It was for them to say, whether in the few moments before the cars met, and while his whole attention was concentrated upon the business in hand, he ought to have seen and avoided the danger. Sher. & Red. Neg. s. 213; Plank v. N. Y. Cent. Rd. Co., 60 N. Y. 607; Kane v. North. Cent. Rd. Co., 128 U. S. 91; Lawless v. Conn. River Rd. Co., 136 Mass. 1; Gustafsen v. Washburn & Moen Mfg. Co., 27 N. E. 179; Washington & Geo. Rd. Co. v. McDade, 135 U. S. 554.

Dickerman & Young for the defendant.

These cars came to the defendant loaded and in perfect repair. It was the duty of the defendant to receive and transport them. R. L. 3399.

A considerable number of the leading railroad systems in

the United States use cars constructed exactly as these were, and the defendant must receive cars so constructed or lose the benefit of the traffic which comes from these roads.  It appeared from the testimony, that cars equipped with double deadwoods could be safely coupled by the exercise of proper care, and it has been repeatedly held, that the use of cars so constructed, is not negligence.  *Michigan. Cent. Rd. Co.* v. *Smithson,* 1 Am. & Eng. Ry. Cas. 101; 45 Mich. Rep. 212; *Indianapolis &c. Rd. Co.* v. *Flanigan,* 77 Ills. 365 ; *Toledo &c. Rd. Co.* v. *Black,* 88 112; *Baldwin* v. *Chicago &c. Rd. Co.,* 50 Iowa 680 ; *Kelley* v. *Wisconsin Cent. Rd. Co.,* 63 Wis. 307; 21 A. & E. Cas. 633.

A master need not use the best appliance, but only one which is reasonably safe.  *Whitwam* v. *Wis. & Minn. Rd. Co.,* 58 Wis. 408; *North. Cent. Ry. Co.* v. *Husson et al.,* 101 Penn. 1; *Ballou* v. *Chicago, M. St. P. R. R. Co.,* 54 Wis. 267.

The plaintiff was cautioned that the business which he undertook was a dangerous one, and he was at the time when injured, on the train for the purpose of learning.  Having entered the defendant's employ with full notice of the risks to which he would be exposed, he must assume the hazard himself.  *Hathaway* v. *Mich. Cent. Rd. Co.,* 51 Mich. 253 ; 2 Thomp. Neg. 976 ; Wait Ac. & Def. 417, and cases there cited ; *I. B. and N. R. Co.* v. *Flanigan,* 77 Ill. 365 ; *Baldwin* v. *C. R. I and P. R. Co.,* 50 Iowa 680 ; *Way* v. *Ill. Cent. Rd. Co.,* 40 Iowa 341 ; *Ch. N. W. Rd. Co.* v. *Ward,* 61 Ill. 131; *Toledo, Wabash & Western* v. *Clark,* 88 Ill. 112 ; *Chicago & c. Rd. Co.* v. *Clark,* 108 Ill. 113 ; 15 A. & E. R. Cases 261 ; *O'Keefe* v. *Thorn,* 16 At. Rep. 737 (Pa.)

The fact that the plaintiff was a minor at the time he received the injury, does not vary the rule.  *Goff* v. *Norfolk W. Rd. Co.,* 36 Fed. Rep. 299 ; *Brazil & Chicago Coal Co.* v. *Cain,* 98 Ind. 287 ; *Ciriak* v. *Merchants' Woolen Co.,* 146 Mass. 182 ; *Buckley* v. *Gutta Percha Mfg. Co.,* 113 N. Y. 540.

The deadwoods between which the plaintiff's arm was caught,

were plainly visible, and it was the duty of the plaintiff to have observed them and avoided the danger. He is guilty of contributory negligence in not having done so. 2 Thomp. Neg. 1009; *Humphrey* v. *Newport News M. V. Rd. Co.*, 33 W. Va. 135; 39 A. & E. R. Cas. 363; *Kelley* v. *Wis. Cent. Rd. Co.*, 63 Wis. 307; 21 A. & E. R. Cas. 633; *Lothrop* v. *Fitchburg Rd. Co.*, 150 Mass. 423 and cases cited.

Since there was no conflict in the evidence, the question of negligence was for the court. *Greenwald* v. *Marquette, H. & O. Rd. Co.*, 41 Mich. 197; 8 A. & E. R. Cas. 133; *Smith* v. *Potter*, 46 Mich. 258; *Mitchell* v. *Chicago & G. T. Ry. Co.*, 51 Mich. 236; 12 Am. & Eng. R. Cas. 163; *Humphrey* v. *Newport News & Miss. Val. Co.*, 33 West Va. 135; 39 Am. & Eng. Ry. Cas. 363; *Mackin* v. *B. & A. Rd. Co.*, 135 Mass. 201; *Ciriak* v. *Merchants' Woolen Co.*, 146 Mass. 182; *Lothrop* v. *Fitchburg Rd. Co.*, 150 Mass. 423. *Hart* v. *Peters*, 14 Wis. 542; *Spaulding* v. *Ch. & N. W. Rd. Co.*, 33 Wis. 582–9; *Read* v. *Morse*, 34 Wis. 315; *Ballou* v. *Ch. & N. W. Rd. Co.*, 54 Wis. 257; *Kan. Pac. Ry. Co.* v. *Butts*, 7 Kan. 308; *Fleming* v. *W. Pac. Rd. Co.*, 49 Cal. 353; *Barton* v. *St. Louis & Iron M. Rd. Co.*, 52 Mo. 253–8; *Fletcher* v. *Atlantic &c. Rd. Co.*, 64 Mo. 484; *East Tenn., Va. & Ga. Rd. Co.* v. *Bayliss*, 74 Ala. 150; *Herring* v. *Wilmington &c. Rd. Co.*, 10 Iredell 452 (N. C.); *Biles* v. *Holmes*, 11 Ired. 16 (N. C.); *Anderson* v. *Cape Fear Steamboat Co.*, 63 N. C. 399; *Grigsby* v. *Chappel*, 5 Rich. 443 (S. C.); *City of Indianapolis* v. *Cook*, 99 Ind. 10; *Goshen* v. *Smith*, 92 Penn. St. 435–8; *Philadelphia &c. Rd. Co.* v. *Ritchie*, 102 Penn. St. 425; *Johnson* v. *Hudson Rd. Co.*, 20 N. Y. 73; *Wilds* v. *Hudson River Rd. Co.*, 24 N. Y. 430; *Fox* v. *Town of Gladstonbury*, 29 Conn. 204–8; *Toomey* v. *London &c. Ry. Co.*, 91 E. C. L. 566, 571–2; *Randall* v. *Balt. & Ohio Rd. Co.*, 109 U. S. 478; *Goodlett* v. *Louisville & Nash. Rd. Co.*, 122 U. S. 391; *Latremouille* v. *Ben. & Rut. R. Co.*, 63 Vt. 336–344.

TAFT, J. delivered the opinion of the court.

After the plaintiff rested in the opening of his case the defendant moved for a verdict upon the ground that there was no testimony tending to show that the defendant was negligent in receiving or hauling the cars which caused the injury to the plaintiff, nor in cautioning the plaintiff about the work that he was to do. The plaintiff claimed to recover upon both grounds. The cars causing the injury did not belong to the defendant, were not of its construction, but came to it, in the course of its business, from a connecting road. It is difficult to see any distinction between the liability of the defendant in respect of its own cars, and those belonging to another road, coming to it for transportation over its line. If any part of the equipment of a car is not safe and suitable when annexed to its own property, it is doubtful if the statute would compel it to transport cars belonging to others equipped in the same manner. Conceding that the statute imposes an obligation upon the defendant to receive and forward cars coming to it from a connecting line, it may well be questioned whether it could be compelled to receive those dangerous in their construction, or deadly in their use. The defendant urges that in addition to the obligation imposed upon it by statute to receive such cars, that unless it does so, it will lose its through business. Whether such would be the result is at least problematical. It might be the means of compelling connecting roads to provide their cars with suitable equipment. Whatever might be the result in respect of a loss of business, we know of no legal reason for relieving a company from liability for its negligence in order to enable it to retain its business. We think the testimony did not tend to show negligence in the defendant in receiving and forwarding cars equipped with double deadwoods : that with suitable instructions to a brakeman double deadwoods are as safe as single ones ; if this was the only question in the case we should be inclined to affirm the ruling of the court below.

The important point in the case is the claim of the plaintiff that the defendant neglected to give him suitable instructions in regard to coupling cars equipped with double deadwoods. Upon this claim, the testimony of the plaintiff tended to show that he was employed by the defendant as a brakeman upon one of its freight trains, and when in the line of his duty, was injured in an attempt to couple two cars equipped with double deadwoods; that freight cars are equipped with deadwoods either single or double; that in coupling cars with single deadwoods, the latter do not meet, being prevented from meeting by a shoulder upon the draw-bar, leaving a space between them sufficiently wide for the brakeman to use his arm in handling the coupling pin. That with double deadwoods, when the cars come together, the deadwoods meet. That coupling freight cars is a very dangerous business, with either kind of deadwoods. That he was a young man, ignorant of railroad service, inexperienced in coupling cars, and at the time of the accident had not observed cars with double deadwoods. That defendant employed him, knowing of his ignorance and inexperience, put him at work as brakeman, gave him no instructions as to coupling cars, save as to certain danger from cars loaded with lumber. That within a few days he learned to couple cars with single deadwoods, but that in his first attempt to couple double deadwood cars, he lost an arm. That the manner of coupling the two kinds was essentially different, that in coupling cars equipped with double deadwoods the arm and hand must be kept above or below the deadwoods instead of between them as in the case of single deadwoods, as the double ones meet, while the single ones do not. That double deadwood cars were brought onto the defendant's road daily in large numbers, that one might reasonably be expected in any train. That about the sixth day of this service, he was called upon suddenly to couple the two parts of a train, and attempted to do it; that the cars were equipped with double deadwoods, and he, not noticing the difference, made the attempt in his usual way; that his arm was

caugh at once and crushed between the deadwoods. These are the main facts indicated by the plaintiff's testimony. Did he have the right to have them submitted to the jury?

When an employer engages one to perform a dangerous service which requires caution and the exercise of peculiar skill, knowing that he is without experience and ignorant of its dangers, it is the duty of the employer to give the employee suitable instructions and warnings, as to the dangers he is likely to meet in the performance of the services he is engaged in and is required by the employer to perform. The defendant does not seriously contend against this rule, but insists that at the time of the accident, it was using all reasonable means to instruct the plaintiff as to the duties of his position, the dangers of the work and how to avoid them. But this very fact was one that the plaintiff had the right to have the jury pass upon, for the court cannot say as matter of law that the defendant was fulfilling its duty in respect of instructions. In his few days of service he had learned to couple single deadwood cars, and had been warned of danger from cars loaded with lumber, but his testimony tended to show that he had not been instructed as to double deadwood cars, not even informed of their existence. In this respect we think it tended to show negligence in the defendant in not giving him suitable instructions as to the manner of coupling them and its dangers. It did not suffice for the defendant to tell the plaintiff, that he must be careful, that the business was highly dangerous; this must have been apparent to any one of ordinary observation. He should have been told in what the dangers consisted and how to avoid them and given suitable instructions as to his duties.

The defendant makes the further objection that the accident was caused by the plaintiff's own negligence. There is no doubt about the rule of law invoked by the defendant in this respect. Conceding the negligence of the defendant, if that of the plaintiff contributed in the least degree to the accident there can be

no recovery. But this was not a question for the court as the evidence then stood before it. It was a proper question for the jury. It is true that at the time of the accident the plaintiff could see the drawbars, he could see the double deadwoods, the cars were fast coming together, he had at the most but a few seconds to make any observations or examine the appliances for connecting them. If it was apparent to him at the time, that the deadwoods would meet under any circumstances, the claim of the defendant might be urged with some force, but the question is was he negligent in not observing that they would meet, that the draw-bars were so constructed that they would be pushed back under the cars so that the deadwoods would meet. In all the cars which he had then handled the draw-bars prevented the deadwoods from meeting; he had but a few seconds to observe and act, and to say as matter of law that he was negligent in not noticing that the double deadwoods would meet is to hold him to a rule which we think is too strict. It was for the jury to say whether under all the circumstances he was negligent. It is true that a servant assumes the known and obvious dangers attendant upon his entering and continuing in the employment in which he is engaged, but this rule does not relieve the employer from the duty of giving the servant suitable instructions as to the peculiar dangers of the service. The dangers may be obvious to an experienced brakeman, but an inexperienced one, or one with no instructions may fail in perceiving them. The service is fraught with danger. Railroad statistics show that one brakeman is killed and more than twenty are wounded in the United States daily, in coupling and uncoupling cars; experts in the service often suffer, much more the ignorant and inexperienced. The equipment of the car which caused the plaintiff's injury is appropriately denominated the " deadwood," for whatever gets between them, is thereafter " as dead as a door nail." A brakeman's body or arm is a frail instrument when used to stop a moving freight train. A master must not expose a servant ignorant of the

Jerry Reynolds *v.* Boston & Maine Railroad Company.

great dangers of the service and inexperienced in the manner of performing them even with his consent to such dangers without instructions and cautions sufficient to enable him to do his work as safely as the circumstances by which he is surrounded permit, he exercising reasonable care and prudence on his part. An experienced man may safely do a service involving obvious danger while certain injury would follow the attempt to do it by one inexperienced or without instructions; an inexperienced man may see the danger but be ignorant of the risk and of the manner of performing the work so as to avoid injury therefrom. This case is a good illustration of the reasonableness of the rule requiring instructions and cautions by a master of the hazards of the service, in which the servant is engaged. Had the plaintiff been informed of double deadwoods and shown how to couple cars equipped with them, he would undoubtedly have avoided the injury, the master at least would not have been in fault. An object lesson of thirty minutes duration, would no doubt have been sufficient to teach him the mode of coupling cars equipped with double deadwoods and the dangers incident thereto. The testimony tending to show negligence in the defendant in the respect indicated and that the plaintiff was in the exercise of due care, the case should have been submitted to the jury. In failing to do this there was error in the ruling of the court below, for which the

*Judgment is reversed and cause remanded.*