MILTON ANDERSON, DEFENDANT IN ERROR, v. ERIE
RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued November 28, 1902—Decided March 2, 1903.

The plaintiff, while acting as a brakeman in the employment of the
defendant, fell from the roof of a freight car and was injured.
The cause of his fall was that the grab-iron on the roof pulled
out the screw which held it, as he threw his weight upon it in
descending, the defects being the insufficiency of the screw and
the deterioration of the wood. The car belonged to the Chicago
and Erie Railway Company, and first appears in the evidence as
arriving loaded at Port Jervis, in a freight train which came from
the west over the Delaware division of the defendant's railroad.
Afterwards it was hauled by the defendant to Weehawken, where
the accident happened. *Held*—

1. It must be inferred against the plaintiff that the car was
received by the defendant loaded for transportation by it as a
common carrier.

2. The defects complained of were not such as, under the cir-
cumstances, the defendant was bound to guard against.

On error.

For the plaintiff in error, *Corbin & Corbin*.

For the defendant in error, *Warren Dixon*.

The opinion of the court was delivered by

DIXON, J. The plaintiff, a brakeman in the employ of the
defendant, fell and was injured while descending from a box
car in the defendant's yard at Weehawken. The cause of his
fall was that the fastening of the grab-iron on top of the car
gave away as he threw his weight upon it. The evidence
tended to show two defects in the fastening—one, the use of a
screw running less than an inch into the wooden roof, instead
of a larger screw or a bolt running entirely through the roof
and held by a nut underneath; the other, deterioration of the
wood through which the screw ran, indicated by the fibers
adhering to the thread of the screw after it was wrenched
away.

It was proved that the car did not belong to the defendant, but was the property of the Chicago and Erie Railway Company, an Indiana corporation, owning and operating a railroad from Hammond, Indiana, to Marion, Ohio; that at ten minutes past twelve in the morning on June 2d, 1901, the car arrived loaded at Port Jervis, coming in a train of sixty freight cars from the west over the Delaware division of the defendant's road; that it was there inspected by the defendant's inspectors, found satisfactory, and made up by the defendant in another train, which left Port Jervis at nine thirty that evening and reached the Weehawken yard at ten fifty-five the next morning. The accident happened about noon the same day.

There is no direct testimony in the case as to where or by whom the car was loaded, but we think the only legitimate inference is that it came loaded into the possession of the defendant for transportation by it as a common carrier. The fact that it was the property of another owner rebuts any presumption, which might arise from possession, that it was used by the defendant in its own business, and this rebuttal is strengthened by the further fact that, when it first appears in the defendant's possession, it was fully loaded, and was afterwards handled by the defendant merely for transportation.

The general principles of the law cast upon the plaintiff the burden of proving the duty of the defendant, and we think he sustained this burden only to the extent of such duty as rests upon a railroad company which receives a loaded car of another owner, to be hauled by the company to the place of destination.

The nature of that duty has been the subject of considerable judicial comment. 20 *Am. & Eng. Encycl. L.* (*2d ed.*) 80. All authorities agree that it requires the exercise of reasonable care for the safety of employes, but they are not all agreed as to the nature of the care demanded. Sometimes it has been held that the duty was co-extensive with the duty of the company respecting its own cars. *O'Neil* v. *St. Louis, &c., Railway Co.,* 9 *Fed. Rep.* 337; *Felton* v. *Bullard,* 94 *Id.* 781; *Jones* v. *New Haven and Hartford Railroad Co.,* 20 *R. I.* 210.

In Massachusetts the rule is said to require only the employment of competent inspectors, who are to be deemed fellow-servants of those managing the train, and for whose neglect therefore the company is not responsible to its employés. *Mackin* v. *Boston and Albany Railroad Co.,* 135 *Mass.* 201; *Bowers* v. *Connecticut River Railroad Co.,* 162 *Id.* 312.

We think, however, that the weight of reason and authority is in favor of these propositions:

*First.* That, on receiving a car for transportation, the company is entitled to assume that the car had been properly constructed of suitable materials, for all the purposes for which the owner intended it to be used. *Ballou* v. *Chicago, &c., Railroad Co.,* 54 *Wis.* 257; *Gutridge* v. *Missouri Pacific Railway Co.,* 94 *Mo.* 468.

*Second.* That, on receiving the car, the company is bound to make such examination as would be likely to discover conditions rendering a car, so constructed, unfit for safe transportation on the company's line. This examination has been called a cursory examination—an examination not of a very minute character (*Richardson* v. *Great Eastern Railway Co.,* 1 *C. P. Div.* 342); an inspection for defects visible or discernible by ordinary examination. *Eaton* v. *New York Central and Hudson River Railroad Co.,* 163 *N. Y.* 391; *Gottlieb* v. *New York, Lake Erie and Western Railroad Co.,* 100 *Id.* 462; *Dooner* v. *Delaware and Hudson Canal Co.,* 164 *Pa. St.* 17; *Baltimore and Potomac Railroad Co.* v. *Mackey,* 157 *U. S.* 72.

*Third.* That, at convenient places during the journey, the company is bound to make the same inspection and tests of such a car as it should make of its own car, for the purposes of discovering defects likely to occur in the course of transportation.

Under these rules we are unable to discern any evidence of fault in the defendant contributing to the plaintiff's accident.

The defect of which he complains respecting the screw used to fasten the grab-iron was one in construction, which the defendant had a right to assume did not exist; and the same statement is probably true regarding the unsoundness of the

wood. Neither of these defects was discoverable by ordinary inspection or by anything short of a very minute examination, and neither of them could occur in the course of transportation.

We therefore conclude that the motion to direct a verdict for the defendant should have been granted, and because of its refusal the judgment of the plaintiff must be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 13.