EUGENE KILEY *v.* RUTLAND RAILROAD CO.

May Term, 1905.

Present  ROWELL, C. J., TYLER, WATSON, and HASELTON, JJ.

Opinion filed February 3, 1908.

*Master and Servant—Injury to Servant—Evidence—In Performance of Duty—Contributory Negligence—Inspection of Cars by Trainmen—Rule of Company—Construction—Fellow Servants—Trainmen and Car Inspectors—Negligence—Burden of Proof—Presumptions—Exceptions to Charge—Too General.*

In an action by a conductor against a railroad company for injuries received in attempting to mount a freight car in a train going six miles an hour, in consequence of the giving way of one of the rounds in the end ladder that he was climbing, evidence considered and *held* that assumption of risk, contributory negligence, and defendant's negligence in failing properly to inspect the car were questions for the jury.

Where the round of an end ladder, that a conductor was climbing in attempting to mount a freight car in his train, gave way because the wood into which it was fastened was rotten, a jury would be warranted in finding that a prior inspection of the car, made by the inspector merely walking along each side of the train and looking at the cars, the running gear, ladders, and so forth, was negligent.

The rule of a railroad company that trainmen must inspect their trains before leaving a terminal and at intervals during the trip does not require them to inspect the cars so thoroughly as do car inspectors at terminal stations; there being evidence that what trainmen did under the rule was merely to look the trucks over to see whether the connections were all right and the trucks in working order.

The fact that the duties of trainmen require them to mount moving cars is recognized by the statute that requires railroad companies to equip their cars with end ladders rather than side ladders.

In an action by a conductor for injuries received in attempting to mount a freight car in his train which was moving at the rate of six miles an hour, due to the giving way of a round in the end ladder that he was climbing, plaintiff's testimony that grabirons and stirrups were attached to cars to enable trainmen to board a train in motion, as well as one standing, tends to show that trainmen were expected to mount moving trains, and so supports the allegation of the declaration that a duty of his employment required plaintiff to mount moving trains.

A servant is not precluded from recovering for injuries received in a hazardous position that he has voluntarily and unnecessarily taken, where that hazard has in no way contributed to his injuries.

A railroad company's car inspector is not the fellow servant of the trainmen, as regards the inspection of either its own or foreign cars carried by it, but is the representative of the railroad company in the performance of a contractual duty that it cannot so

delegate as to be relieved from liability for the negligent performance thereof. *Hard* v. *Railroad Co.*, 32 Vt. 473, disregarded, as having been overruled.

In an action by a railroad conductor for injuries from the ladder on a car giving way as he was climbing it, although the burden of proof as to negligence is on plaintiff, there is no presumption that the ladder was sufficient.

The trial court should always know what is excepted to, and this Court should always be able to see that a question argued here was distinctly raised below.

A general exception to the charge of the court on the subject-matter of seven requests for instructions, that cover, in a more or less involved form, a large part of the law applicable to the case, was too vague and general to be available; but to reserve for review any proposition stated in the charge, a specific exception to it was needed.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1904, Rutland County, *Munson, J.*, presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The car that plaintiff was climbing was a Boston & Maine car, and the exceptions state that: ''The defendant gave evidence, which was uncontradicted, that this train of cars was inspected at North Bennington by its inspector, Howley, an inspector of long experience, who went up one side of the train and down the other side, and, among other things, examined the grabirons and ladders by looking them over, and that he saw nothing that indicated any weakness or other trouble with the ladders; that he did not get up and test the ladders with his weight or muscle and that it is not customary to do so; but that he looked to see if any signs of weakness appeared, and discovered none. Howley could not recall the inspection of a Boston & Maine car, but testified that he inspected every car that was in the train Kiley left with.''

*H. Henry Powers* and *P. M. Meldon* for the defendant.

Attempting to mount a train going six miles an hour is negligence, as matter of law. Plaintiff had no work on the top

of the train, and his only purpose was to get into the caboose. His excuse is that the train was moving so fast that he did not dare to wait for the caboose. If that was so, he is to blame for it because he ordered the train to be set in motion. So the plaintiff's negligence defeats his right of recovery. *Harvey* v. *Eastern R. R.*, 116 Mass. 269; *Hunter et al.* v. *C. & S. V. R. R.*, 112 N. Y. 371; *Phillips Case*, 49 N. Y. 177; *Solomon* v. *Manhattan R. R.*, 103 N. Y. 437; *Laboy* v. *Mo. Pac. R. R. Co.*, 36 Fed. 879; Hutchinson on Carriers, §641; Bailey, Master and Servant, 92; *Gibson, Admx.* v. *Erie Railway Company*, 63 N. Y. 449; *Worthington* v. *C. V. R. R.*, 64 Vt. 107; *Kilpatrick* v. *Grand Trunk R. R.*, 72 Vt. 267.

The rule required plaintiff to inspect his train at terminal points. He had the same opportunity to discover the defect that the inspector had, and, because of the rule, was equally obligated to do so. *Alabama etc. R. R. Co.* v. *Carroll*, 84 Fed. 772.

There were two ways to get into the caboose; one perfectly safe, the other perfectly reckless. Plaintiff departed from the line of his duty and chose the latter, and must suffer the consequences. *Gilbert* v. *Bur. & C. R. Co.*, 128 Fed. 529; *Morris* v. *Duluth etc. Ry. Co.*, 108 Fed. 749; *Cunningham* v. *Chicago etc. Co.*, 17 Fed. 882; *Chicago etc. Co.* v. *Davis*, 53 Fed. 61.

The presumption is that Howley did his duty, and no evidence was shown that the defect in the ladder was visible, the jury must have found that the defect was latent and that Howley would have discovered it by the use of force. The law does not require a test by the use of force. *Louisville etc.* v. *Bates*, 146 Ind. 564; *Baldwin* v. *Chicago etc. Co.*, 50 Iowa 689; *Louisville etc. Co.* v. *Williams*, 95 Ky. 199; *Thompson* v. *Great Northern*, 79 Minn. 291; *Ballou* v. *Chicago etc. Co.*, 54 Wis. 257.

The car inspector was a fellow servant with plaintiff. *Smith* v. *Potter*, 46 Mich. 258; *Galveston etc. R.* v. *Farmer*, 73 Tex. 86; *Kelley* v. *Abbott*, 63 Wis. 307; *Cincinnati etc. Co.* v. *McMullen*, 117 Ind. 439; *Neutz* v. *Jackson etc. Co.*, 139 Ind. 411; *Wonder* v. *B. & O. R. R.*, 32 Md. 411; *Dewey* v. *Detroit etc. R. R.*, 97 Mich. 329; *Columbus & Xenia R. R.* v. *Webb*, 12 Ohio St. 475; *Railroad* v. *Fitzpatrick*, 42 Ohio 318; *Phil. etc. R. R. Co.* v. *Hughes*, 119 Pa. St. 301; *Hard* v. *Vt. & Canada R. R.*, 32 Vt. 473; *Mackin* v. *Boston etc. R. R.*, 135 Mass. 201.

*Butler & Moloney* for the plaintiff.

·   By the great weight of authority, the receiving company is as much bound to inspect foreign cars as to inspect its own. *Gutridge* v. *Mo. Pac. R. Co.*, 94 Mo. 468; *Gottlieb* v. *N. Y. etc. Co.*, 100 N. Y. 466; *O'Neil* v. *Railroad Co.*, 9 Fed. 337; *Jetter* v. *R. R. Co.*, 2 Abb. Ct. App. Dec. 458; *Jones* v. *Railroad Co.*, 28 Hun. 364; *Goodrich* v. *N. Y. etc. R. R.*, 116 N. Y. 398; *Mo. Pac. R. Co.* v. *Barber*, 44 Am. & Eng. R. R. Cas. 523; *Moon* v. *N. P. R. Co.*, 46 Minn. 106, 24 Am. St. 195; *Mason* v. *Richmond R. Co.*, 111 N. C. 482; *Fay* v. *Minn. etc. R. Co.*, 11 Am. & Eng. R. R. Cas. 193; *C. B. & Q. R. Co.* v. *Avery*, 109 Ill. 314; *L. & N. R. Co.* v. *Veach*, 11 Am. & Eng. R. R. Cas., N. S. 28; *A. G. S. R. Co.* v. *Carroll*, 9 Am. & Eng. R. Cas. 759; *Bennett* v. *N. P. R. Co.*, 48 Am. & Eng. R. R. Cas. 182; *International etc. Co.* v. *Keenan*, 44 Am. & Eng. R. R. Cas. 607; *Smith* v. *Potter*, 2 Am. & Eng. R. R. Cas. 140 (46 Mich. 258); *Chicago etc. R. Co.* v. *Fry*, 131 Ind. 319.

HASELTON, J.   This was an action on the case for negligence.   It appeared that the plaintiff was conductor of a local freight train of the defendant which left North Bennington for Rutland, June 3, 1903, in the afternoon.   The train, as made up at North Bennington, a terminal point, consisted of some twenty-two or twenty-three cars, counting the caboose and a passenger coach which were at the rear, and the length of the train was not greatly varied, though at different stations cars were set out and others were taken in.   The plaintiff was injured at North Dorset, where a small amount of freight was unloaded.

At the close of the evidence the defendant moved to have a verdict directed in its favor.   This motion was overruled and the defendant took an exception.   The entire evidence is referred to on the questions raised by this exception.

The plaintiff's evidence tended to show that the passenger coach was behind the caboose at the very rear end of the train, was empty of passengers and had gates and "a good deal of rigging" at the rear entrance thereto.   His testimony tended to show that the freight that was unloaded at North Dorset was unloaded from a car about the middle of the train; that the cars were from 28 to 40 feet in length, making the train a long one,

and leaving the rear end of the train a very considerable distance from the station; that the night was dark and the station unlighted; that all the light the plaintiff had was from his lantern; that, after the freight was unloaded at North Dorset, the plaintiff did not travel back in the darkness with his lantern to the caboose before giving the signal for starting, but that he gave, or caused to be given, the signal from the platform; that the train started, and that he then moved hastily towards the rear of the train as far as the end of the platform, which was a gravel structure; that on account of the darkness he was uncertain as to how far from him the rear end of the train was; that as the speed of the train was increasing, and as the caboose would be followed by a passenger car, he thought it might be unsafe to wait for the caboose, as he would have otherwise considered it safe to do; and that on account of the gearing of the gates at the rear end of the passenger coach, he thought he might get his hand caught if he waited for the very rear end of the train; and that therefore out of regard for his safety, as a Boston & Maine car, which proved to be the fourth car from the last, was going by at about six miles an hour, he took hold of the grabiron on the side of the car, put his foot on the stirrup below, swung himself around the end of the car to the end ladder, placed his foot on the lower round of the ladder, took hold of one of the upper rounds with his hand, was safely on the ladder, and was climbing it, when the inside end of a round which he had hold of gave way, causing him to lose his balance and fall; that he overlooked or omitted nothing in the regular process of climbing; that the speed of the train had nothing to do with the giving way of the round, and that the only thing that had anything to do with his fall was the giving way of the round in question. The plaintiff testified to long service on the defendant's road, to familiarity with its rules; that he knew the rules required him to look out for his safety; that he considered the course he took a safe one; that the way in which he proceeded was a usual and ordinary way, and that grabirons and stirrups were provided for the purpose of enabling trainmen to board a train in motion as well as to get onto one standing still. The plaintiff, though testifying that the inside end of the round gave way so that the round hung down, did not undertake to say how it gave way. He, however, called as a witness one Collins, whose

testimony, taken with other testimony, tended to show that the fastening at one end of the round pulled out, leaving splinters and rotten wood visible.

The defendant's evidence tended to show that the plaintiff was under the influence of intoxicating liquor at the time of the accident, while evidence on the part of the plaintiff tended to show that he was sober and had not been drinking. The evidence of two car inspectors of the defendant, Schryer and Taylor, tended to show that an inspection made after the accident disclosed no such condition as must have existed if the testimony of the plaintiff and Collins was true. A considerable part of the evidence of the defendant was directed to the point that the accident did not happen in the manner testified to by the plaintiff.

The car inspector of the defendant at North Bennington was one Howley, and his testimony tended to show that the inspection of the cars in the Kiley train was made by him after the train was drawn up, and was made by walking along on each side of the train and looking at the cars, their running gear, ladders and so forth. There was some evidence of an examination of some of the cars in Kiley's train before the train was made up, but there was evidence from which it could fairly be inferred that the only real inspection of the car in question was made when it was in the train as before stated. The nature of that inspection, as the testimony tended to show it, has been referred to.

The first ground of the motion to have a verdict directed for the defendant was: "That the attempt of the plaintiff to board the train in motion, as testified to by him, without any necessity then pressing upon him, but, as he says, because he had done it before safely and he supposed he could safely do it again, and whether he lost his job or not, if left behind, was negligence *per se;* and that, as matter of law on the plaintiff's own testimony in this behalf, he assumed the risk of the experiment, and could not recover damages received thereby, whether the defendant was negligent or not in respect to the condition of the ladder, and whether or not the plaintiff was under the influence of intoxicating liquor." But enough references to the testimony have been herein made to show that it cannot be said as matter of law that in no view of the evidence was the plaintiff free

from contributory negligence. There was a view of the evidence which reasonable men might take that exonerated him from contributory negligence, that was inconsistent with the claim that his manner of boarding the train was an "experiment," a view that recognized his right to be where he was when the round gave way, and that contemplated the giving way of the ladder round as the sole cause of the injury.

The second ground of the defendant's motion for a verdict was as follows: "The car claimed to have been defective, being on the plaintiff's own testimony a foreign car, the defendant owed the plaintiff the duty only of inspection by a competent inspector, and no claim is made by the plaintiff that the inspector was incompetent, except in the single instance of the inspection of the plaintiff's train in the manner above stated." No question was made but that Howley was competent, and in view of the course of the argument this statement of the second ground for the motion is treated as raising the question of whether there was evidence tending to show that his inspection in this instance was negligent. From a review of the evidence it is clear that it cannot be said as matter of law that Howley's inspection was not negligent. It appears from the evidence of the defendant that the inspection made by Howley was substantially the same as that made by the two inspectors of the company who inspected the train after the injury to Kiley and who, as they testified, found nothing wrong about the ladder or rounds. If the jury believed Kiley and Collins and also all the inspectors, they may well have found that Howley's inspection was negligent under any standard of duty whatever.

The third ground of the defendant's motion for a verdict was that Kiley, the plaintiff, did not make the inspection required of him by a written rule of the company with which he was familiar, and that by such failure he was guilty of contributory negligence, and therefore could not recover. The rule invoked is 510 of the defendant company's book of rules and reads as follows: "'Trainmen must inspect their trains before leaving a terminal and at intervals during the trip." Kiley testified to the effect that what the trainmen did under the rule was to look the trucks over to see if the connections were all right, if the trucks were coupled up and in working order. His evidence tended to show that this train inspection

did not relate to the ladders, and was something different from
the inspection of the cars. There is nothing unreasonable in
the view that a rule which imposes upon all trainmen the duty
of inspecting their trains at terminals and at intervals during
a trip, is a very different duty from that imposed upon car in-
spectors at terminal stations, and the practical construction
which Kiley testified was put upon the rule by trainmen seems
to be the true one. The motion to have a verdict directed for
the defendant was properly overruled. The defendant was en-
titled to have the case submitted to the jury under proper in-
structions as to contributory negligence and the assumption of
risks, but in the state of the evidence the case could not be taken
from the jury.

The defendant submitted seven requests to charge which
were not in terms complied with. The first request was: "That
the plaintiff must prove every affirmative allegation material
to the issue that is set up in his declaration. He must
prove that in mounting the car as he claims, that
it was a duty devolved upon him by his employment for
the defendant, and there being no proof in the case that any
such duty was imposed upon him by the defendant, or was fairly
required by the duties of his service at the time of the accident
he cannot recover." The argument made by the defendant
upon this request, which asked the court to instruct the jury
that their verdict must be for the defendant, is that it is one
of the material allegations of the declaration that it was the
duty of the plaintiff to mount moving trains, and that there was
no evidence whatever of any such duty. But the evidence of
the plaintiff as to the movement of trains and the use of "grab-
irons" and other appliances tended to show that trainmen were
expected to mount moving trains. Several inquiries were put
to the plaintiff in cross-examination with the apparent purpose
of shaking his testimony tending to show that the mounting
of moving cars was incidental to his employment, but these
inquiries elicited nothing of a discrediting character. The prac-
tical necessity on the part of trainmen of mounting moving cars
is recognized by the law which provides that railway companies
shall equip their cars with end ladders rather than with side
ladders. Kiley's testimony with respect to the incidental duty
of mounting moving trains does not appear to have been con-
tradicted.

The second request was this: "That there was no emergency present before the plaintiff at North Dorset that required him to mount a moving train in the night time, and that it is a principle of the law of negligence well settled by repeated decisions of the courts all over the country that a party cannot voluntarily and unnecessarily place himself in a position that he knows is dangerous, or that an ordinarily prudent man in his position, would know is dangerous, when there are other positions that he might take in the discharge of his duty that are safe, and if he does so he cannot recover any damages for the injuries he may receive." To say nothing of this request in other respects, it is enough to point out that it denies recovery of damages to one who has received injuries in a hazardous position which he has voluntarily and unnecessarily taken although the hazard to which he has exposed himself has in no way contributed to his injuries. *Corbin* v. *Railway Co.*, 78 Vt. 458. The defendant cites several cases, but what is said in the cases so cited is guarded in the very respect in which this request is not guarded.

The third request was as follows: "The plaintiff avers in his declaration that the defendant employed incompetent servants to inspect its cars. The burden of proof is upon the plaintiff to make out this fact, if the plaintiff relies upon such incompetency to support his case; that the competency of the servant is to be presumed until the contrary appears; that a single act of negligence is not enough to support the claim of incompetency, that the only act proved in this case that the plaintiff may claim is negligence on the part of Howley, the inspector, is his omission to test the rounds of this ladder by applying force to them; that the jury are not at liberty to set up their own standard as to the competency of Howley, nor as to the methods to be applied to make a proper test, but are limited and confined to the proof in the case in respect to that question, and there being no evidence in the case showing or tending to show his incompetency, except this single omission, the jury are charged that incompetency is not established." This request relates to the question of the competency of Howley. But the court disposed of the question of incompetency by charging in accordance with the defendant's contention, that there was no

35

evidence tending to show that Howley was an incompetent inspector and no claim that he was. In argument this request is treated as touching on the question of Howley's negligence and that element is, in a way, woven into the request. But upon that question it is enough to refer to what is herein said in considering the second ground of the defendant's motion to have a verdict directed.

The defendant fourthly requested the court to charge that "if Howley was incompetent or otherwise negligent, or negligent in the discharge of his duties he was a fellow servant of this plaintiff and for that reason this plaintiff cannot recover." There is no occasion for saying anything further about the question of competency; but under this request the question is for consideration whether or not the inspector, in the discharge of his duties as such, was a fellow servant of the plaintiff, so that the plaintiff is disentitled to recover because of the fellow servant doctrine.

If the case of *Hard* v. *R. Co.*, 32 Vt. 473, is law, the plaintiff and Howley were fellow servants. But that case was shown to have been erroneously decided in the fully and carefully considered case of *Davis* v. *R. Co.*, 55 Vt. 84. The Davis case practically overrules the Hard case. That negligence in respect to inspection generally is the master's negligence is the doctrine of *Houston* v. *Brush*, 66 Vt. 331. The opinion cites *Davis* v. *R. Co.*, as authority and makes no reference to *Hard* v. *R. Co.*, for the obvious reason that the case is not authority. See also *Mahoney's Adm'r.* v. *R. Co.*, 78 Vt. 244 and *Reynolds* v. *R. Co.*, 64 Vt. 66.

There are several cases in other jurisdictions which hold that a railroad company's inspectors, in the inspection of its own cars, act as fellow servants of trainmen. These cases are in line with the Hard case in this State just referred to. But it must be said that to-day the doctrine is very generally and firmly established that such inspectors so acting are in the performance of a duty which peculiarly rests upon the company, and which the company cannot so delegate as to relieve itself from responsibility for its non-performance. See *Texas etc. R. Co.* v. *Barrett*, 166 U. S. 617; *Union Pacific R. Co.* v. *Daniels*, 152 U. S. 684; *Baltimore etc. R. Co.* v. *Baugh*, 149 U. S. 369; *Washington etc. R. Co.* v. *McDade*, 135 U. S. 554; *Northern*

*Pacific R. Co.* v. *Herbert,* 116 U. S. 642; *Northern Pacific R. Co.* v. *Babcock,* 104 U. S. 190; *Hough* v. *R. Co.,* 100 U. S. 213; and see the cases cited in the above list. In this State the principle applicable is now so well settled as to make discussion of it superfluous.

In the case at bar it is more particularly urged by the defendant that, in the inspection of foreign cars, the inspectors of a railroad company are fellow servants of the trainmen of the train into which the cars go; that the duty of the master is discharged when he makes provision for inspection by competent inspectors. Upon this question it - was more difficult fifteen or twenty years ago to say on which side the weight of authority rested than it is now to say on which side it rests. The great preponderance of recent authorities goes to establish the doctrine, which this Court now declares and applies, that an inspection of foreign cars as they come to a company from other roads is the receiving company's duty, growing out of its obligation to exercise circumspection for the safety of its employees, and that such being the character of the duty, whoever is commissioned to discharge it acts as the representatives of the company and not as the fellow servant of trainmen, and that however competent the inspector may be his negligence, if he is negligent, is the negligence of the company for which it is responsible under the general law of negligence without protection from the fellow servant doctrine.

*Gottlieb* v. *R. Co.,* 100 N. Y. 462, 3 N. E. 344; *Goodrich* v. *R. Co.,* 116 N. Y. 398, 22 N. E. 397, 15 Am. St. Rep. 410; *Eaton* v. *R. Co.,* 163 N. Y. 391, 57 N. E. 609; *Jones* v. *R. Co.,* 20 R. I. 210, 37 Atl. 1033; *Gutridge* v. *R. Co.,* 94 Mo. 468, 4 Am. St. Rep. 392; *Louisville etc. R. Co.* v. *Williams,* 95 Ky. 199, 44 Am. St. Rep. 214; *Louisville etc. R. Co.* v. *Bates,* 146 Ind. 564, 45 N. E. 108; *Missouri etc. R. Co.* v. *Chambers,* 17 Tex. Civ. App. 487, 43 S. W. 161; *International etc. R. Co.* v. *Kernan,* 78 Tex. 294, 22 Am. St. Rep. 52; *Jones, Reeciver,* v. *Shaw,* 16 Tex. Civ. App. 290, 41 S.W. 690; *Union etc. Co.* v. *Goodwin,* 57 Neb. 138, 77 N. W. 357; *Missouri etc. R. Co.* v. *Barber,* 44 Kan. 612; *Atchison etc. R. Co.* v. *Penfold,* 57 Kan. 148; *Budge* v. *Morgan's etc. Co.,* 108 La. 349, 32 So. 535; *Moon* v. *R. Co.,* 46 Minn. 106, 24 Am. St. Rep. 195; *Dooner* v. *Canal Co.,* 164 Pa. St. 17, 30 Atl. 269; *Mason* v. *R. Co.,* 11 N. C. 482, 32 Am. St. Rep. 814; *Louisville etc. R. Co.*

v. *Reagan*, 96 Tenn. 128; *Texas etc. R. Co.* v. *Archibald*, 170 U. S. 665; *Baltimore etc. R. Co.* v. *Mackey*, 157 U. S. 72.

The above cases are referred to as fully sustaining the proposition that in the inspection of the foreign car in question the inspector, Howley, was not the fellow servant of the plaintiff Kiley. The request which we are now considering raises no question as to the degree of thoroughness of the inspection which the company was in duty bound to make, and the cases last cited are not referred to for their bearing upon that question.

There are a few cases which sustain the defendant's contention but for the most part they are from courts whose later decisions are given above. The case of *Mackin* v. *R. Co.*, 135 Mass. 201, sustains the defendant's contention and has never been overruled, though in consequence of a legislative enactment the Massachusetts court is now able to apply and does apply the law as it is generally understood. See *Bowers v. R. Co.*, 162 Mass. 312, 38 N. E. 508. The case of *Smith* v. *Potter, Receiver,* 46 Mich. 258, makes an inspector a fellow servant of a trainman in respect to the inspection of foreign cars, but does this on the untenable ground that an inspector is a fellow servant of trainmen in the inspection of cars whether they are foreign or not. The ground on which this case was decided is no longer maintained by the Court which rendered the decision therein. *McDonald* v. *R. Co.*, 132 Mich. 372, 93 N. W. 1041. *Anderson* v. *R. Co.*, 68 N. J. Law 647, 54 Atl. 830, though not on the defendant's brief, was somewhat relied on in oral argument. But that case disapproves of the Massachusetts doctrine as announced in *Mackin* v. *R. Co.*, 135 Mass. 201, and holds that a company receiving a foreign car for transportation is bound to make such examination as would be likely to discover conditions which would render the car unsafe for use assuming its original construction to have been proper.

The few cases which relieve a railroad company from a master's duty in respect to the inspection of foreign cars do so, in so far as any reason is given, upon the ground that the company as a common carrier and by statute law must receive and forward such cars. Our statute provides that a railroad company shall receive and transport such cars at reasonable times and on reasonable terms, and the statutes of other states are very similar. Such statutes are intended to prevent unjust

discriminations and ill grounded obstructions, but the argument is far fetched that the duty to transport cars "at reasonable times and on reasonable terms" obliges a company to transport a car which is in an unsafe condition, or relieves the transporting company from a master's duty of inspection, or makes the inspector in the performance of that duty a fellow servant of the trainmen of the train into which the foreign cars go. Every company that transports a foreign car loaded with freight uses the car in its own business of carrying freight for hire. See *Reynolds* v. *R. Co.,* 64 Vt. 66.

The defendant's fifth request was: "That the sufficiency of the ladder is to be presumed unless there be evidence in the case that with fair usage it was insufficient." In respect to the matter of the request there was no presumption of law, but rather an absence of such presumption. Negligence on the part of the defendant was not to be presumed. Insufficiency of the ladder was not to be presumed. The burden of proof in respect to such negligence and such insufficiency was on the plaintiff, and there the charge of the court correctly placed it.

The defendant's sixth request was as follows: "That the plaintiff was not justified in choosing one of two dangerous positions to mount a moving train, if a safe position was available to him, and had no right to start his train and thereby create a dangerous condition, and then, with such condition present, attempt to board the moving train. If he did this, he assumed the risk of his attempt and the defendant is not liable for his injuries." In their brief, counsel for the defendant very properly consider this request in connection with the second request, and the court could not comply with it for the same reason that it could not comply with the second request. This request like the second if complied with would have precluded the plaintiff from recovering for his injuries even if the jury found, as under the testimony they might, that the risk of the attempt, whatever it may have been, did not contribute to the injury. What is herein said in considering the second request need not be repeated.

The defendant's seventh request, not complied with to the satisfaction of the defendant, was the following: "The mere fact that a fellow servant is incompetent, or that the materials have proved defective, or that the appliances or machinery

used in the prosecution of the business have proved insufficient, does not tend even *prima facie* to establish any negligence on his part, but the burden in all such cases is upon the servant seeking recovery to establish the fact that the master did not use reasonable care in these respects or either of them.'' The defendant's brief does not argue this request but simply says: ''The seventh request should have been complied with.'' However, the charge upon the burden of proof and upon the matters connected therewith was a substantial compliance with this request. Reference is made to *Morrisette* v. *R. Co.*, 76 Vt. on page 267, for what was deemed a substantial compliance with a request applicable there and here, though not always, that ''there is no presumption of negligence from the mere happening of the accident.''

The defendant also excepted to the charge of the court upon the subject-matter of the above seven requests. This exception was altogether too vague and general to avail anything. As has been seen these seven requests covered in a more or less involved form a large part of the law applicable to the case. If in the course of the charge, the court stated any proposition which the defendant's counsel deemed unsound a specific exception was needed to bring the proposition before this Court for review. *White* v. *Lumiere etc. Co.*, 79 Vt. 206; *Luce* v. *Hassam*, 76 Vt. 450; *State* v. *Sargood*, 77 Vt. 80.

The trial court should always know what is excepted to. This Court should always be able to see that a question argued here was distinctly raised below.

*Judgment affirmed.*